**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ezra D.,

Plaintiff,

v.

FRANK BISIGNANO,
*Commissioner of Social Security,*

Defendant.

Case No. 25-CV-2045 (JFD)

**ORDER**

---

This matter is before the Court on the Complaint of Plaintiff Ezra D.[1] (Dkt. No. 1) seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision by the Commissioner of Social Security, who denied his application for Disability Insurance Benefits ("DIB") for the period of time after his alleged disability onset date of August 3, 2021. (Pl.'s Br. 1, Dkt. No. 11.)[2] Plaintiff argues that the final decision should be reversed and remanded because the Administrative Law Judge ("ALJ") who authored the decision did not properly account for the effects of Plaintiff's bilateral hearing loss or the effects of COVID-19 on Plaintiff. Plaintiff further claims that the ALJ committed reversible error by presenting Plaintiff as dishonest by overstating or understating medical records and encourages a review of the totality of physical impairments in assessing Plaintiff's Residual

[1] The District of Minnesota's policy is to use only first names and last initials for Plaintiffs in Social Security cases.

[2] Citations to the parties' briefing use the pagination generated by CM/ECF and placed on the top of each page.

Functional Capacity ("RFC"). The Commissioner asks the Court to affirm the final decision. As set forth fully below, the Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole and that the ALJ committed no legal error. Accordingly, the Court affirms the Commissioner's final decision.

## I. <u>Background</u>

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Only Disability Insurance Benefits ("DIB") are at issue here. Disability, for purposes of the program, is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); 20 C.F.R. § 416.905.

### A. Plaintiff's Application for Disability Insurance Benefits

On March 21, 2022, Plaintiff applied for DIB. (Pl.'s Br. 1, Dkt. No. 11.) The alleged onset date of Plaintiff's disability is August 3, 2021. (Tr. 15.)[3] Plaintiff alleges his disability is due to "profound bilateral hearing loss; migraines; neck and shoulder pain; trouble

[3] The Court adopts the Defendant's practice of citing the Social Security Administration Record (Dkt. No. 4) as "Tr." and using the pagination generated by the Administration, located at the bottom right of each page.

swallowing; sleep apnea; asthma and allergies; non-alcohol fatty liver disease; IBD; diverticulosis; arthritis in hands, knees, neck, hips and back." (Pl.'s Br. 1.) Plaintiff's claims were first denied on August 22, 2022 and again upon reconsideration on October 11, 2022. (Tr. 115, 121.) Plaintiff filed a request for a hearing with an ALJ on December 1, 2022. (*Id.* at 125.) The ALJ held an online video hearing on November 7, 2023. (*Id.* at 15.) On February 6, 2024, the ALJ held that Plaintiff did not meet the Social Security Act's definition of disability for the period of the alleged onset of disability through December 31, 2021, the date last insured, and that he was therefore not entitled to benefits under DIB. (*Id*. at 15–31.) That decision ultimately became the final decision of the Commissioner, which Plaintiff now seeks judicial review of by this Court.

In reviewing a claim for disability benefits, an administrative law judge determines whether a person is disabled using the five-step analysis promulgated by the Commissioner that is described in the regulations. *See* 20 C.F.R. § 404.1520. For the first four steps, the claimant bears the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). Steps one through four ask: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant is suffering from a severe medical impairment, (3) whether the claimant's impairment meets or equals the severity of an impairment listed in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, App. 1), and (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform their past relevant work (PRW). 20 C.F.R. § 404.1520. A plaintiff's RFC is a measure of "the most [the plaintiff] can still do despite [the plaintiff's] limitations." 20 C.F.R. § 416.945(a)(1). If the claimant successfully meets their burden of proof for steps one

through four, the Commissioner bears the burden at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v).

If a claimant is not satisfied with the ALJ's decision, they can request that a panel of members of the Social Security Appeals Council review the decision. 20 C.F.R. §§ 404.900(a)(4), 404.968. If the Appeals Council grants review of the ALJ's decision, the Appeals Council's decision on the issue becomes the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). If the Appeals Council denies review, as happened here, the ALJ's decision is the final decision of the Commissioner. *Id.* After obtaining a final decision, claimants can seek review of the Commissioner's decision in federal district court in the district where they live. *Id.*; 42 U.S.C. § 405(g).

The ALJ applied the Social Security Administration's five-step sequential evaluation process. (Tr. 16–30.) At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period, notwithstanding psychological testing records where Plaintiff referred to employment. (*Id.* at 17.) At the second step, the ALJ found that Plaintiff had the following impairments: "bilateral hip bursitis, degenerative disc disease of the lumbar and thoracic spines, hearing loss, degenerative joint disease of the hips, knees, and left shoulder, Asthma-pulmonary nodules, granulomatous disease, obesity, and cervical dystonia." (*Id.* at 17–20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the Listing of Impairments. (*Id.* at 20–22.)

Before step four, the ALJ assessed Plaintiff's RFC, where he found that Plaintiff could perform light work with several limitations. (*Id.* at 22–28.) These limitations are:

> [H]e can stand and walk four hours. He can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally overhead reach [sic] bilaterally. He can frequently reach in all other directions. He can frequently handle and finger. He can have no exposure to potential workplace hazards such as moving machinery or unprotected heights. He can have occasional exposure to extreme heat, cold, humidity, or potential pulmonary irritants such as fumes, odors, dusts, and gases. He can be exposed to moderate noise level environments or quieter.

(Tr. 22–23.)

At the fourth step, the ALJ found Plaintiff was unable to perform past relevant work during the relevant period, as "the exertional demands of the claimant's past relevant work exceed the residual functional capacity." (*Id.* at 29.) The ALJ also noted that Plaintiff was 47 years old at the onset of disability—considered a younger individual—and had a high school education. (*Id.*) At the fifth step, the ALJ determined, using vocational expert ("VE") testimony, Plaintiff's vocational background, and Plaintiff's RFC, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including sedentary unskilled positions such as order clerk (DOT 209.567-014), electronic inspector (DOT 726.684-110), and lab tester (DOT 539.485-010). (*Id.* at 30.)

**B. Plaintiff's Argument**

Plaintiff argues that the ALJ committed reversible legal error by minimizing Plaintiff's bilateral hearing loss and the health effects of COVID-19, leading to incorrect findings at step three, the RFC evaluation, and step five. (Pl.'s Br. 2, 14, 15, 16, Dkt. No 11.)

Plaintiff argues that the ALJ incorrectly minimized the extent of Plaintiff's hearing loss through references to alleged discrepancies in Plaintiff's characterization of the extent of the hearing loss and reiterates the importance of Plaintiff's use of hearing aids. (*Id.* at 3–6.) Plaintiff notes that "inconsistencies in an individual's statements made at varying times do[] not necessarily mean they are inaccurate." (*Id.* at 11 (quoting SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017)).) Plaintiff also notes that it is the ALJ's "duty to develop the record fully and fairly … even if the claimant is represented by counsel." (*Id.* at 15 (quoting *Warner v. Heckle*r, 722 F.2d 428, 431 (8th Cir. 1983).) Accordingly, Plaintiff claims that the finding at the third step was not based on substantial evidence. (*Id.* at 14.) Additionally, Plaintiff states that his hearing impairment was not accurately described in the RFC, leading to an improper assessment by the vocational expert (VE) and finding in step five that there were jobs that existed in significant numbers in the national economy that he could have performed. (*Id.* at 14–16.)

Plaintiff claims that the effects of COVID-19 on his health—specifically cardiac symptoms—were discounted by the ALJ. (*Id.* at 6–7.) COVID-19 and heart palpitations were deemed non-severe by the ALJ. (Tr. 17–18.) Plaintiff focuses on the reframing of provider notes from a cardiac workup where the ALJ stated Plaintiff experienced "elevated right atrial pressure" rather than "*significantly* elevated right atrial pressure," as the care provider wrote. (Pl.'s Br. 6–7, Dkt. No. 11 (emphasis added).)

Plaintiff also alleges that the ALJ committed reversible error in violating I-2-8-25 of the Hearings, Appeals, and Litigation Law Manual ("HALLEX"). (*Id.* at 8–12.) In support, Plaintiff provides five examples of asserted factual misstatements by the ALJ. (*Id.*)

First, the ALJ states Plaintiff "stopped working … and immediately started working with an attorney for disability," but Plaintiff claims the record supports a gap between ending work and consulting an attorney. (*Id.* at 8.) Second, the ALJ referenced evidence that Plaintiff lifted a treadmill and fridge during the period at issue, but Plaintiff argues that the lifting occurred before the disability onset date. (*Id.* at 9.) The third regards the characterization of Plaintiff's treadmill and bicycle use when additional use was encouraged by a physician. (*Id.* at 9–10.) Fourth, the ALJ references home projects followed by a visit to a chiropractor as evidence that Plaintiff is able to work, but Plaintiff asserts that the chiropractor visits are evidence of limitations. (*Id.* at 9.) Finally, Plaintiff raises issues of the ALJ's comparison of testimony in 2020 to 2023. (*Id.* at 11.) The ALJ also makes comments throughout the decision regarding the veracity of Plaintiff's statements on the record, which Plaintiff contests.

**C. Legal Standards**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court

may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the Commissioner. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## II. DISCUSSION

### A. The ALJ Did Not Commit Reversible Error in Considering Plaintiff's Symptoms.

Plaintiff argues that the ALJ erred in steps three and five of the analysis. (Pl.'s Br. 14–16, Dkt. No. 11.) Plaintiff points to evidence of the severity of hearing loss not being appropriately considered or the effects of COVID-19 on Plaintiff's health. (*Id.* at 3–7.) The Court finds that Plaintiff has not met his burden to show that the ALJ committed reversible error at these steps. In essence, Plaintiff asks the Court to reweigh the evidence presented to the ALJ, which the Court may not do. *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010).

The ALJ found that Plaintiff's hearing loss was a severe impairment at step two, but distinguished Plaintiff's hearing loss from his history of chronic ear infections, which he did not find as a severe impairment at step two. (Tr. 17–18.) Hearing loss was also relevant in step two in determining functional limitations of concentrating, persisting, or maintaining pace, which the ALJ determined were mild. (*Id.* at 20.) At step three, the ALJ evaluated whether Plaintiff's hearing loss met the requirements of listed impairment 2.10 and found it did not. (*Id.* at 22.) Though Plaintiff argues that the hearing loss was not sufficiently considered, Plaintiff does not point to evidence that would suggest that Listing 2.10, or any other listing, was met. In the RFC evaluation, the ALJ found that Plaintiff can work in environments in which the noise level is moderate or quieter, in recognition of Plaintiff's hearing loss issues. (*Id.* at 23.) Plaintiff, again, does not point to specific evidence suggesting that the finding in the RFC is incorrect. Similarly, Plaintiff's assertion that the finding in step five is inappropriate is not tied to specific evidence that the noise environments in the representative occupations would prevent him from performing those jobs.

Evidence Plaintiff cited in support of his argument that the ALJ did not adequately consider the health effects of COVID-19 is even less persuasive. While the ALJ characterizes Plaintiff's right atrial pressure as "elevated" rather than "significantly elevated," the conclusion does not naturally follow that the ALJ discounted the health issues through this omission. Nor does Plaintiff connect this characterization to the ALJ's finding that his heart palpitations were not a severe impairment at step two, in the RFC, or in the occupations the ALJ concluded Plaintiff could perform.

**B. Claimed Misstatements and HALLEX Violation**

Plaintiff alleges the ALJ misstated facts in "several egregious examples" and violated the Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-8-25, constituting reversible error. (Pl.'s Br. 8, Dkt. No. 11.) Again, Plaintiff is asking this Court to reweigh the evidence assessed by the ALJ, which the Court is barred from doing. While the record may, by some calculation, include evidence that supports Plaintiffs arguments, it is also replete with evidence to the contrary. Plaintiff's arguments are largely conclusory and do not raise issues not addressed by the ALJ. That Plaintiff disagrees with the ALJ's conclusion does not mean the ALJ's conclusion is unsupported by evidence. The ALJ's conclusions were supported by citations to the record, and where the record provided evidence that could support multiple conclusions, the ALJ noted those differences. (*See, e.g.*, Tr. 24–28.)

As to the alleged HALLEX violation, Plaintiff cites no authority supporting the proposition that a violation of HALLEX can qualify as reversible error. Other courts in this District have declined to find that HALLEX violations serve as a basis for remand. *See Crow v. Berryhill*, Case No. 16-CV-2831, 2018 WL 1440331, at *8 (D. Minn. Mar. 22, 2018) (finding no support for a conclusion that a failure to follow HALLEX would constitute an error that would impact the determination on the plaintiff's ability to work); *see also*, *Renstrom v. Barnhart*, Case No. 05-CV-2716 (JRT/RLE), 2006 WL 8570247, at *12 (D. Minn. Dec. 29, 2006), *R&R adopted*, 2007 WL 10151810 (D. Minn. Jan. 29, 2007) ("[T]he HALLEX manual is not binding on this Court.")

Because the Court finds that a violation of the HALLEX alone does not constitute reversible error, the Court declines to assess whether such a violation occurred. Even if the ALJ made a mistake in suggesting that Plaintiff immediately worked with an attorney after stopping work, Plaintiff does not connect how this may have led to a different outcome by the ALJ, and the Court does not find that this mistake or any of the other contentions Plaintiff has in his list of "egregious examples" as changing the ALJ's determination. Ultimately, when viewing the ALJ's decision as a whole, it is supported by substantial evidence in the record.

## III. CONCLUSION

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Motion for Summary Judgment (Dkt. No. 10) and Memorandum (Dkt. No. 11) is **DENIED**;
2. The relief requested in Defendant's Brief (Dkt. No. 24) is **GRANTED**; and
3. The final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 2, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge